UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| 4M FRUIT DISTRIBUTORS, INC., GARDEN FRESH SALAD CO., INC., JOHN CERASUOLO CO., INC., LISITANO PRODUCE, INC., NEW ENGLAND BANANA CO., INC., and STATE GARDEN, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CRESCENT PRODUCE, INC., MICHAEL J. GALLAGHER, ANA REALTY CORPORATION, and JOHN M. GALLAGHER, JR., <br><br> Defendants. | Civil No. 13-12808-FDS |

## MEMORANDUM AND ORDER ON
## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

**SAYLOR, J.**

This is a dispute arising under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* Plaintiffs are Massachusetts corporations engaged in the business of buying and selling wholesale quantities of produce in interstate commerce. They sold produce to defendant Crescent Produce, Inc. Defendants Michael Gallagher and John Gallagher are officers and directors of Crescent. Ana Realty Corporation is an entity owned and controlled by the Gallaghers that collects rent from Crescent.

On November 6, 2013, plaintiffs filed the complaint in this case. The complaint alleges that defendants failed to pay plaintiffs for the produce they sold to defendants. It contains

sixteen claims: six claims of failure to pay for goods sold and delivered against Crescent; six claims of breach of contract against Crescent; one claim of dissipation of PACA trust assets against Crescent and the Gallaghers; one claim of recoupment of PACA trust assets against Ana Realty; one claim of violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2, 11, against all defendants; and one claim to reach and apply any judgment to the Gallaghers' interests in Ana Realty.

Defendants have defaulted; the issue is ascertaining the amount of damages to be assessed. The Court must first determine whether the complaint alleges sufficient facts to state claims for relief. The Court must then consider the amount of compensatory damages to be awarded and the extent, if any, to which enhanced damages, attorney's fees, costs, and other relief should be awarded.

For the reasons set forth below, the Court will enter default judgment against defendants, award damages as requested except for the request for multiple damages under Chapter 93A, and grant, in part, other forms of related relief.

## I.    **Factual Background**

The relevant facts are summarized below as set forth in the complaint unless otherwise noted.[1]

Crescent Produce, Inc., is a Massachusetts corporation engaged in the business of buying

---

[1] Because defendants have defaulted for failure to plead or otherwise defend, they are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which the damages will be calculated." *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-63 (1st Cir. 2002) (quoting *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999)). Before entering a default judgment, a court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency. *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002); *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992). On a motion for default judgment, a court may also consider any affidavits or evidence on the record. *See KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 17-20 (1st Cir. 2003).

wholesale quantities of produce. Crescent operates at a premises owned by Ana Realty Corporation. (DeFrancesco Aff. ¶ 6). Michael Gallagher and John Gallagher are officers, directors, and principals of Crescent and Ana Realty. Between 2000 and 2012, and Ana Realty took out five mortgages on the property housing Crescent. (*Id.* ¶¶ 7(a)-(e)). On December 9, 2011, the City of Brockton recorded a tax lien on the property for unpaid real estate taxes in the amount of $13,047.08. (*Id.* ¶ 7(d)).

4M Fruit Distributers, Inc., Garden Fresh Salad Co., Inc., John Cerasuolo Co., Inc., Lisitano Produce, Inc., New England Banana Company, Inc., and State Garden, Inc., are Massachusetts corporations engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities in interstate commerce. They are licensed to sell produce under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.*

From September 2012 until September 2013, Crescent bought produce from each of the above-listed produce-selling companies but failed to pay for it. (DeFrancesco Aff., Ex. 2; Burke Aff., Ex. 2; Cavallaro Aff., Ex. 2; Lisitano Aff., Ex. 2; Anastasi Aff., Ex. 2; Staples Aff., Ex. 2). The invoices for those sales call for the payment of interest assessed at a rate of 18 percent per year on amounts not paid in a timely manner. (*See, e.g.*, DeFrancesco Aff., Ex. 2). The payments for those invoices are long overdue.

Calculations based on the invoices show that as of March 1, 2014, Crescent owes the following amounts, including interest: $1,553.26 to 4M; $5,816.32 to Garden Fresh; $18,342.92 to Cerasuolo; $2,859.50 to Lisitano; $8,704.24 to NEBC; and $231.26 to State Garden (DeFrancesco Aff., Ex. 1; Burke Aff., Ex. 1; Cavallaro Aff., Ex. 1; Lisitano Aff., Ex. 1; Anastasi Aff., Ex. 1; Staples Aff., Ex. 1).

According to Jack Anastasi, treasurer of NEBC, Michael Gallagher bought produce from NEBC on behalf of Crescent. (Anastasi Aff. ¶ 8). In his affidavit, Anastasi states that Michael Gallagher knew at the time that Crescent had serious financial difficulties and that he "can only conclude that at the time Michael Gallagher opened the account for Crescent . . . he was aware [it] . . . was in financial difficulty, had serious cash flow problems and would not make payment as agreed." (*Id.*). He also alleges that Michael Gallagher told him that "he wanted to make payment and stay in business" but that Crescent "was really struggling financially." (*Id.* ¶ 9).

According to Karen Staples, an account manager for State Garden, Michael Gallagher told her "in early June 2013 that a Market Basket had opened nearby and was killing his business." (Staples Aff. ¶ 5). She states in her affidavit that "public information indicates that the Market [B]asket [near Crescent] opened on October 9, 2012." (*Id.*).

The complaint alleges that "Crescent purchased and obtained [p]roduce from the [p]laintiffs, and each of them, intending that payment would not be timely made therefor." (Compl. ¶ 91). It also alleges that Crescent transferred assets to Ana Realty, and that both companies were aware of Crescent's defaults when the transfers occurred. (Compl. ¶¶ 80-83, 94-95).

## II.  Procedural Background

Plaintiffs filed the complaint in this case on November 6, 2013. It alleges sixteen claims: six claims of failure to pay for goods sold and delivered against Crescent; six claims of breach of contract against Crescent; one claim of dissipation of PACA trust assets against Crescent and the Gallaghers; one claim of recoupment of PACA trust assets against Ana Realty; one claim of violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2, 11,

4

against all defendants; and one claim to reach and apply any judgment to the Gallaghers' interests in Ana Realty.

On January 13, 2014, the Court entered a preliminary injunction enjoining defendants from changing the status quo of any property owned by Ana Realty and any interests in Ana Realty owned by Michael and John Gallagher.

On February 11, the Court entered a default as to all defendants under Fed. R. Civ. P. 55(a). On February 12, counsel for defendants entered an appearance but did not contest the defaults.

On March 13, plaintiffs filed a motion for default judgment. The motion requests (1) judgment against Crescent for the breach-of-contract and failure-to-pay claims; (2) judgment against Crescent, Michael Gallagher, and John Gallagher for the dissipation-of-trust-assets claim; (3) judgment against Ana Realty for the recoupment-of-trust-assets claim; and (4) judgment against Crescent, Michael Gallagher, and John Gallagher for the Chapter 93A claim. The motion requests relief of (1) damages of $43,122.08; (2) double damages under Chapter 93A; (3) attorneys' fees of $18,056.25; (4) costs of $1,055.92; (5) a continuation of the January 13 preliminary injunction; (6) appointment of a commissioner to receive, from Ana Realty, Michael Gallagher, and John Gallagher, all Ana Realty stock certificates issued to Michael and John Gallagher, the Ana Realty corporate stock ledger, copies of all notes and mortgages executed in Ana Realty's name, and the accounts payable and accounts receivable ledgers of Ana Realty; and (7) the ability to request that the commissioner sell the Gallaghers' stock to satisfy the judgment if defendants do not satisfy the judgment within twenty days.

On April 9, the Court held a hearing on the default judgment. Neither party presented

additional evidence to the Court.

III.     **Analysis**

A default judgment may be entered without a hearing under Fed. R. Civ. P. 55(a) if "a court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002). The Court has federal-question jurisdiction under 28 U.S.C. § 1331 because plaintiff asserts claims for violations of the PACA and supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367. Defendants have not responded to the motion for default judgment. Accordingly, the Court will consider whether the allegations in the complaint state a specific, cognizable claim for relief.

   A.    **Claims in the Complaint**

         1.    **Contract Claims**

The complaint alleges six claims of breach of contract, one from each plaintiff against Crescent. To prevail on a claim for breach of contract under Massachusetts law, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Gluckenberger v. Boston University*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citing *Loranger Const Corp. v. E.F. Hauserman, Co.*, 1 Mass. App. Ct. 801, 801 (1973)).

Plaintiffs allege that the invoices in this case are valid contracts between them and Crescent. Crescent failed to pay them as required by the invoices. Default judgment will

therefore be entered for plaintiffs on the six breach-of-contract claims.[2]

## 2. **Dissipation of Trust Assets Claim**

The complaint alleges one claim of dissipation of trust assets under the PACA against defendants Crescent, Michael Gallagher, and John Gallagher. Plaintiffs seek to recover from Michael and John Gallagher personally under the PACA.

"PACA was enacted during the Great Depression in the 1930s 'to suppress certain unfair and fraudulent practices in the marketing of fresh fruits and vegetables.'" *Alphas Co., Inc. v. Dan Tudor & Sons Sales, Inc.*, 679 F.3d 35, 38 (1st Cir. 2012) (quoting S. Rep. No. 73-554, at 1(1934)). The statute makes it unlawful "[f]or any dealer to reject or fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity bought or sold or contracted to be bought, sold, or consigned in interstate or foreign commerce by such dealer." 7 U.S.C. § 499b(2). Individuals injured by violations of the PACA can sue for damages caused by the violations in any court of competent jurisdiction. *Id.* § 499e(a)-(b).

In addition,

> PACA [creates] a statutory trust over any goods, receivables, or proceeds from perishable agricultural commodities until the buyer makes full payment. The commodities, receivables, or proceeds "shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions have been received by such unpaid suppliers, sellers, or agents."

*Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1, 4-5 (1st Cir. 1999) (quoting 7 U.S.C. ¶

---

[2] The claims for failure to pay for goods sold and delivered are duplicative of the breach-of-contract claims.

499e(c)(2)).[3] "Except where the statute provides otherwise, a PACA trust is governed by general principles of trust law." *Boston Tomato v. Bostonia Produce, Inc.*, 2013 WL 1793858, at *2 (D. Mass. Apr. 8, 2013) (citing *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 615 (2d Cir. 1998)).

Under Department of Agriculture regulations, produce dealers are "required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of" PACA. 7 C.F.R. § 46.46(d)(1); *see also Boston Tomato*, 2013 WL 1793858, at *2.

As the First Circuit has explained:

[A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities.

*Hiller*, 165 F.3d at 9 (quoting *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993)).[4]

As explained above, Crescent owes plaintiffs for the produce invoices. Crescent was therefore required to keep assets in trust that were sufficient to satisfy those obligations.

---

[3] A supplier must preserve a PACA trust by giving written notice to the buyer of its intent to preserve the benefits of the trust. 7 U.S.C. § 499e(c)(3). Here, plaintiffs' invoices satisfy the statutory notice requirement. *See* 7 U.S.C. § 499e(c)(4) (supplier can preserve trust with notices included in "ordinary and usual billing or invoice statements"); (DeFrancesco Aff., Ex. 2; Burke Aff., Ex. 2; Cavallaro Aff., Ex. 2; Lisitano Aff., Ex. 2; Anastasi Aff., Ex. 2; Staples Aff., Ex. 2).

[4] The PACA legal framework "is to be distinguished from the piercing the veil doctrine, where the corporate form is disregarded because the individual has either committed a fraud, or because the corporation is a 'shell' being used by individual shareholders to advance their own purely personal rather than corporate ends." *Hiller*, 165 F.3d at 9.

8

According to the complaint, it failed to do so. Crescent is therefore liable for dissipation of trust assets under PACA. Because the complaint alleges that the Gallaghers are "controlling person[s]" of Crescent, they are also liable. *See id.* at 9-10 ("An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act.").

Accordingly, default judgment will enter for plaintiffs on the dissipation of trust assets claim.

### 3. Recoupment of Trust Assets Claim

Plaintiffs also seek to recover from Ana Realty for recoupment of trust assets. "[I]n certain circumstances courts have permitted a plaintiff food supplier to trace and obtain funds which have already been released from a PACA trust fund to a third party." *Inn Foods, Inc. v. Olympic Intern. Bank and Trust Co.*, 1994 WL 774505, at *2 (D. Mass. Dec. 14, 1993) (collecting cases). "A third party who acquires an interest in trust property through a breach of trust is entitled to retain or enforce the interest to the extent the third party is protected as a bona fide purchaser." Restatement (Third) of Trusts § 108(2) (2014). Thus, a third party that receives property subject to a PACA trust can be sued for recovery of that property if it had actual knowledge that it received the property in breach of the trust. *See id.* § 108(1) ("A third party is protected from liability in dealing with or assisting a trustee who is committing a breach if trust if the third party does so without knowledge or reason to know that the trustee is acting improperly."); *Boston Tomato*, 2013 WL 1793858 at *5-6.

The complaint alleges that Ana Realty received money and assets from Crescent, and that the Gallaghers owned and operated both Crescent and Ana Realty. Ana Realty therefore actually

9

knew that Crescent had improperly disbursed the money. Plaintiffs can therefore recover the money and assets disbursed to Ana Realty by Crescent. Accordingly, default judgment will enter for plaintiffs on the recoupment of trust assets claim.

### 4. Chapter 93A Claim

Finally, the complaint alleges that defendants violated Chapter 93A. Under that statute, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93 A, § 2(a). "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" *Cummings v. HPG Int'l Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)). Violation of the PACA is not a *per se* Chapter 93A violation. *Friendly Fruit, Inc. v. Sodexho, Inc.*, 529 F. Supp. 2d 158, 166 (D. Mass. 2007).

Plaintiffs contend that defendants violated PACA by buying goods when they intended not to pay or knew they could not pay for them. "[O]ne who buys goods when he intends not to pay or knows that he cannot pay commits an unfair or deceptive practice within the meaning of Chapter 93A." *B & R Produce Packing Co., Inc. v. H Farms, Inc.*, 2014 WL 576210, at *3 (D.N.H. Feb. 11, 2014); *see also Marshall v. Stratus Pharm., Inc.*, 51 Mass. App. Ct. 667, 676 (2001). In addition, a trustee violates Chapter 93A where he or she breaches a fiduciary duty and acts as a trustee "in trade or commerce." *Quinton v. Gavin*, 64 Mass. App. Ct. 792, 798 (2005).

The complaint and affidavits allege that defendants knew their business was in financial trouble when they bought produce from plaintiffs, and knew they could not pay plaintiffs for the

produce. They also allege that defendants breached their fiduciary duties as trustees while engaging in commerce. That is enough to show violations of Chapter 93A.

Accordingly, default judgment will enter for plaintiffs on the Chapter 93A claim.

**B.     Relief**

   **1.     Compensatory Damages and Interest**

The PACA authorizes compensatory damages for individuals injured by violations of the statute. 7 U.S.C. § 499e(a)-(b). According to documentation submitted by plaintiffs, defendants owe them the following amounts as of March 1, 2014: $1,553.26 to 4M; $5,816.32 to Garden Fresh; $18,342.92 to Cerasuolo; $2,859.50 to Lisitano; $8,704.24 to NEBC; and $231.26 to State Garden. (DeFrancesco Aff., Ex. 1; Burke Aff., Ex. 1; Cavallaro Aff., Ex. 1; Lisitano Aff., Ex. 1; Anastasi Aff., Ex. 1; Staples Aff., Ex. 1). Plaintiffs' invoices also call for one-and-a-half percent interest per month on overdue payments. (*See, e.g.*, DeFrancesco Aff., Ex 2). Judgment will enter for each plaintiff as to those amounts, plus one-and-a-half percent interest per month from March 1, 2014.[5]

   **2.     Double Damages Under Chapter 93A**

Plaintiffs request double damages under Chapter 93A. "[T]o be entitled to multiple damages under Chapter 93A, . . . plaintiffs must make an additional showing that [defendants] willfully or knowingly violated the statute." *B & R Produce*, 2014 WL 576210, at *4; *see also* Mass. Gen. Laws ch. 93A, § 11 (providing for multiple damages for a "willful or knowing" violation).

Three courts in this circuit have addressed whether a plaintiff was entitled to multiple

---

[5] Plaintiffs' motion requests $11,448.91 in damages for Garden Fresh. Garden Fresh's exhibits, however, only show that it is owed $5,816.32. Judgment will enter as to the latter amount.

damages under Chapter 93A for violations of the PACA. In *B & R Produce*, the court held a hearing on the default judgment. 2014 WL 576210, at *3. The court found that because the testimony, "suggest[ed] that the [defendants] were caught in a failing business and that their actions were the result of that situation," multiple damages under Chapter 93A were not warranted. *Id.* at *4. In contrast, the court in *Bostonia Produce, Inc. v. Sirois*, 2011 WL 3328791 (D.N.H. July. 11, 2011), found that treble damages were warranted under Chapter 93A because of the defendant's history of PACA violations. 2011 WL 3328791, at *2. In particular, the court noted that the defendant was "a repeat PACA offender" that had multiple damages levied against it in two previous cases. *Id.* Finally, the court in *B.C. Produce, Inc. v. G & G Lambert, Inc.*, 2003 WL 22113426 (D. Mass. Sep. 12, 2003), did not enter an award for multiple damages without a hearing on the issue. *See* 2003 WL 22113426, at *2.

The circumstances of this case are closer to those of *B & R Produce* than *Bostonia Produce*. While defendants failed to pay plaintiffs over the course of a year, the evidence submitted by plaintiffs indicates that defendants were caught in a failing business. In particular, defendants said that they "wanted to make payment and stay in business" but that they were "really struggling financially." (Anastasi Aff. ¶ 8). They also said that the Market Basket that had opened near Crescent on October 9, 2012, was hurting business, and took out several mortgages on the property housing Crescent. (DeFrancesco Aff. ¶¶ 7(a)-(e); Staples Aff. ¶ 5).

Though the record is sparse, it shows that defendants were unable to pay for the produce they bought because they were struggling to keep Crescent in business. The parties declined to offer further evidence or testimony when asked. Under those circumstances, multiple damages under Chapter 93A are not appropriate. *See B& R Produce*, 2014 WL 576210, at *4; *B.C.*

12

*Produce*, 2003 WL 22113426, at *2.

### 3. Attorneys' Fees and Costs

Under Massachusetts law, reasonable attorneys' fees may be recovered "where the contract between the parties provides for their payment." *Leventhal v. Krinsky*, 325 Mass. 336, 341 (1950); *see also Carter v. Warren Five Cents Sav. Bank*, 409 Mass. 73, 80 (1991) ("There is no doubt that the parties may provide in an agreement that, in certain circumstances, one of them may be obligated to pay the other's attorney's fees, incurred in asserting rights under the agreement."). Plaintiffs' invoices require defendants to pay costs for collection of overdue amounts, including attorneys' fees. (*See, e.g.*, DeFrancesco Aff., Ex 2).

Plaintiffs have submitted time records in the form of invoices from defense counsel detailing the tasks each attorney performed, the total number of hours billed, the billing rate for those hours, the date each task was performed, and the amount of time spent on each task. (Osborne Aff., Ex. 1).[6] These records show attorneys' fees of $18,056.25 and costs of $1,055.92. Judgment will enter against defendants for those amounts.

### 4. Reach and Apply to the Assets of Ana Realty

Finally, plaintiffs request the ability to reach the Ghallagers' stock in Ana Realty and apply it to this judgment. "Reach and apply is a prejudgment security device which is equitable in nature; it seeks . . . to restrain the defendant's disposition of his own intangible property, and then to reach and apply such property to satisfy the plaintiff's claim." *In re Osgood*, 203 B.R.

---

[6] "[T]he absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Castaneda-Castillo v. Holder*, 723 F.3d 48, 79 (1st Cir. 2013) (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984)). "Records that include the different tasks each attorney performed, the total number of hours billed, the billing rate for those hours, the date on which each task[] was performed, and the amount of time spent on each task generally fulfill this requirement." *Id.*

865, 869-70 (Bankr. D. Mass. 1997) (quoting Michael C. Gilleran, Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply, Mass. L. Rev. 156, 169-70 (1984)).

Mass. Gen. Laws ch. 214, §§ 3(6), (7) are the reach-and-apply statutes in Massachusetts. Under this regime,

> the court must engage in a two-step process to establish (1) the indebtedness of the defendants and (2) the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt. Mass. Gen. Laws ch. 214 §§ 3(6) and (7); *Papamechail v. Holyoke Mut. Ins. Co.*, 8 Mass. App. Ct. 849, 852 (1979)).

*Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 2d 52, 57 (D. Mass. 2002) (quoting *General Motors Acceptance Corp. v. Camilleri Bros. Chevrolet of Holyoke, Inc.*, 188 F. Supp. 2d 73, 76 (D. Mass. 202)); *see also Foster v. Evans*, 384 Mass. 687, 692 (1981). The first step, Michael and John Gallagher's indebtedness, has already been established.

The Massachusetts reach-and-apply statute explicitly allows litigants "to reach and apply shares or interests in corporations organized under the laws of the commonwealth or of the United States, and located or having a general office in the commonwealth." Mass. Gen. Laws ch. 213 § 3(7). The complaint and exhibits show that Ana Realty is a corporation organized under the laws of the United States and located in Massachusetts. Any stock the Gallaghers have in Ana Realty can therefore be reached by plaintiffs and applied to this judgment. *See General Motors*, 188 F. Supp. 2d at 76 (holding that plaintiff could reach and apply defendants' stock in Subaru because they were the sole owners of that stock).

### 5. **Sale of Ana Realty Stock**

Finally, plaintiffs have requested that the Court set up a method for them to sell the Gallaghers' stock in Ana Realty if the judgment in this case is not satisfied. Their proposed

14

order provides for the appointment of a commissioner to sell the Gallaghers' stock if plaintiffs have not satisfied the judgment within twenty days.

Transfer of a defendant's stock to a reach-and-apply plaintiff is a legitimate remedy under Massachusetts law. *See Metrowest Bank v. Porter*, 59 Mass. App. Ct. 1102, at *1 (2003) (table decision). It is unclear, however, why the Court would need to appoint a commissioner to allow plaintiffs to sell the stock if the judgment in this case was not satisfied. Under the circumstances, transfer of the stock to plaintiffs' attorneys for sale appears appropriate. Plaintiffs may request the appointment of a commissioner at a later date.

**IV.    Conclusion**

For the foregoing reasons, judgment shall enter for plaintiffs as follows:

1. 4M Fruit Distributors is awarded $1,553.26 in compensatory damages, plus interest at a rate of one-and-a-half percent per month from March 1, 2014, against Crescent Produce, Inc., Michael Gallagher, and John Gallagher, jointly and severally.

2. Garden Fresh Salad Co., Inc., is awarded $5,816.32 in compensatory damages, plus interest at a rate of one-and-a-half percent per month from March 1, 2014, against Crescent Produce, Michael Gallagher, and John Gallagher, jointly and severally.

3. John Cerasuolo Co., Inc., is awarded $18,342.92 in compensatory damages, plus interest at a rate of one-and-a-half percent per month from March 1, 2014, against Crescent Produce, Michael Gallagher, and John Gallagher, jointly and severally.

4. Lisitano Produce, Inc., is awarded $2,859.50 in compensatory damages, plus interest at a rate of one-and-a-half percent per month from March 1, 2014, against

Crescent Produce, Michael Gallagher, and John Gallagher, jointly and severally.

5. New England Banana Co., Inc., is awarded $8,704.24 in compensatory damages, plus interest at a rate of one-and-a-half percent per month from March 1, 2014, against Crescent Produce, Michael Gallagher, and John Gallagher, jointly and severally.

6. State Garden, Inc., is awarded $231.26 in compensatory damages, plus interest at a rate of one-and-a-half percent per month from March 1, 2014, against Crescent Produce, Michael Gallagher, and John Gallagher, jointly and severally.

7. Plaintiffs are awarded $37,507.50 in compensatory damages, plus interest at a rate of one-and-a-half percent per month from March 1, 2014, against any monies or assets transferred to Ana Realty by Crescent. Each plaintiff is entitled to a *pro rata* portion of the amounts awarded. The amounts awarded under this paragraph are to be reduced by the amounts awarded pursuant to paragraphs one through six of this judgment.

8. Plaintiffs are awarded attorneys' fees of $18,056.25 against Crescent, Michael Gallagher, and John Gallagher, jointly and severally.

9. Plaintiffs are awarded costs of $1,055.92 against Crescent, Michael Gallagher, and John Gallagher, jointly and severally.

10. The preliminary injunction issued on January 13, 2014, shall remain in effect following the entry of judgment until further order of this Court. Unless the judgments against defendants have been fully satisfied within twenty days of the date of the entry of judgment, all stock in Ana Realty owned by Michael and John Gallagher will be transferred to plaintiffs' counsel, to be sold and applied to this

judgment.

11. The Court retains jurisdiction of this action to enforce the provisions of this judgment.

**So Ordered.**

Dated: June 4, 2014

    /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge